### J. F. BLAKE v. KANSAS CITY SOUTHERN RY. CO.
#### Decided February 18, 1905.

**1.—Carrier of Passengers—Pullman Conductor—Ejecting Trespasser.**

The rule that the conductor of a Pullman sleeping car, forming part of a railroad company's train, is to be regarded, in his dealings with its passengers, as its servant, and making it responsible for his acts as if he were directly employed by it, does not apply with reference to his conduct towards a trespasser on the train and car.

**2.—Same—Trespasser.**

Where a boy got upon the rear end of a Pullman car attached to a train, with no intention to become a passenger, but intending to ride without paying, he was a trespasser, and for his ejection by the Pullman conductor, who was not employed by the railway company, the latter was not liable, since the relation of master and servant did not exist between it and such conductor, and its only duty towards the trespasser, that of avoiding unnecessary injury to him, it did not owe in its character of a common carrier.

**4.—Same—Joint Tort Feasors—Compromise Settlement.**

Where plaintiff sued the railway company and the Pullman car company as joint tort feasors, for personal injury resulting from his ejection from the

train, a settlement made by him with the Pullman company of all matters in controversy between him and that company operated to release the railway company, although the judgment giving effect to the settlement ordered that the case should stand for trial as between plaintiff and the railway company.

Appeal from the District Court of Bowie. Tried below before Hon. P. A. Turner.

` *Chas. S. Todd* and *T. D. Rowell,* for appellant. `

*Glass, Estes & King,* for appellee.—1. There was no testimony whatever, that the conductor of the Pullman car had any authority from the defendant in this suit to eject trespassers. In the absence of such authority, the defendant would not be liable for any wanton or unlawful ejection of plaintiff by him, from the train. International & G. N. Ry. Co. v. Anderson, 82 Texas, 520; Texas & P. Ry. Co. v. Black, 87 Texas, 160; International & G. N. Ry. Co. v. Cooper, 88 Texas, 607; Texas & P. Ry. Co. v. Lyons, 50 S. W. Rep., 161.

2. The procurement of a judgment and the satisfaction of same against one of two joint tort feasors, for injuries resulting from acts for which a recovery against both tort feasors was sought, will operate as a release and discharge against any further or future liability arising from the same acts. Abb v. Northern Pacific Ry. Co., 68 Pac. Rep., 954; Seither v. Philadelphia Traction Company, 17 Atl. Rep., 338; Tompkins v. Clay Street Ry. Co., 4 Pac. Rep., 1165; Denver Ry. Co. v. Sullivan, 41 Pac. Rep., 501; Hancock v. Metz, 15 Texas, 205; Hartigan v. Dickinson, 83 N. W. Rep., 1091; Van Dyver v. Pollak, 54 Am. St. Rep., 119; Snyder v. Witt, 42 S. W. Rep., 441; Robertson v. Trammell, 11 Texas Ct. Rep., 588.

TALBOT, ASSOCIATE JUSTICE.—This suit was originally instituted by appellant against the Kansas City Southern Railway Company on the 27th day of May, 1902, to recover damages for personal injuries alleged to have been sustained by him by reason of having been ejected from one of appellee's passenger trains while in rapid motion, by a Pullman palace car conductor. On the 1st day of February, 1903, by an amended petition the Pullman Palace Car Company was made a party defendant, and appellant sought to recover a joint judgment against both the appellees and the said Pullman Palace Car Company for the sum of $2,000, alleging a joint liability. At the October term of the court, 1903, appellant and the Pullman Palace Car Company effected a settlement by compromise, the said company agreeing to pay the appellant the sum of $50 for all matters in controversy between them.

Appellant then filed his third amended petition against appellee alone, alleging the same cause of action, with prayer for judgment. Appellee pleaded a general denial and the said compromise judgment and payment thereof to appellant in bar of his right to recovery herein. Also that the conductor who ejected appellant from the train was not employed by appellee, and that appellee had no control over him, but that said conductor was under the control and in the employment of the said Pullman Palace Car Company. A trial was had before the court without a jury and resulted in a judgment for appellee, from which this appeal is prosecuted.

The facts are: That on December 23, 1901, appellant, John F. Blake, a boy about 18 years of age, got on the rear end of a Pullman palace car in charge of the Pullman conductor, which was the rear car of one of appellant's passenger trains, for the purpose of riding to a sawmill some miles distant. He did not offer to pay, nor did he intend to pay, anything to ride on said car, and was a trespasser thereon. The Pullman conductor discovered Blake on the platform of said car and ordered him to get off, and, by drawing a pistol and threatening to shoot him and by actually firing off said pistol, caused Blake to jump from said car, which resulted in serious and permanent injury to him. No proof of authority from the Kansas City Southern Railway Company for the Pullman conductor to eject appellant was shown; nor was it shown that the Pullman conductors on appellee's road had ever before ejected a trespasser from the train. The said Pullman conductor was in the employ and paid by the Pullman Car Company and was under the control and subject to the orders of that company. Said Pullman conductor was not under the control or subject to the orders of appellee, the Kansas City Southern Railway Company.

At the October term of the court, 1903, appellant and his next friend, Henry Blake, and the Pullman Palace Car Company, which was then a party defendant in this cause, entered into the following written agreement, to wit:

J. F. Blake, by next friend, Henry Blake v. Kansas City Southern Ry. Co. and Pullman Palace Car Co. In the District Court, Bowie County, September term, A. D. 1903, October 2, 1903.

No. 8152.

The plaintiff, J. F. Blake, a minor, by his father and next friend, Henry Blake, appearing in person and by counsel, and the defendant, Pullman Palace Car Company, appearing by its counsel, by way of compromise of all the matters in controversy in this suit between the plaintiff and the defendant, Pullman Palace Car Company have agreed and consented, and by these presents do agree and consent, by and with the approval of the court, after the court is fully advised in the premises, that judgment may be rendered in this cause in favor of the plaintiff, J. F. Blake, suing by his father and next friend, Henry Blake, against the defendant, Pullman Palace Car Company, for the sum of fifty dollars, and the costs incurred as between said plaintiff and said defendant, Pullman Palace Car Company, for which execution may issue, unless the said fifty dollars for the use and benefit of said J. F. Blake, as in such cases provided by law, be paid over to the clerk of the court within twenty days from the date hereof, in the event of which payment this judgment shall be satisfied.

Witnesses' (Signatures):    T. D. Rowell and Todd & Armistead,
    Henry Blake,    Attorneys for the plaintiff, J. F.
    J. J. Gray,    Blake, Henry Blake, next friend
    J. M. McCormick.    of J. F. Blake. McCormick &
    Spence, Attorneys for Pullman
    Co., defendant.

The foregoing agreement is approved this October 2, 1903.

J. M. Talbot, Judge 5th Judicial District of Texas."

This compromise and settlement was submitted to and approved by the presiding judge of the District Court in which said suit was pending, and judgment entered in accordance with the terms thereof, at the October term of said court, 1903, which was agreed to by plaintiff and his next friend, Henry Blake, his attorneys of record and the attorneys for the Pullman Palace Car Company. The sum of money named in said agreement of compromise and for which amount said judgment was rendered in favor of appellant and against said Pullman Palace Car Company, was duly paid by said company and said judgment fully paid off and discharged in the manner and as provided by the law in such cases. The said judgment, in addition to the compromise agreement, recited, "It is therefore considered, ordered and adjudged by the court, in accordance with the foregoing agreement of compromise, that the plaintiff, J. F. Blake, by his next friend, Henry Blake, have and recover of and from the defendant, The Pullman Palace Car Company, the sum of fifty dollars and all costs incurred as between the plaintiff and said Pullman Palace Car Company, for which let execution issue; said sum of fifty dollars to be paid over to the clerk of this court within twenty days from this 2d of October, 1903, and to be disposed of for the benefit of said minor as provided by law; it is further ordered that this case stand for trial as between the plaintiff and the Kansas City Southern Railway Company."

1. The first question arising upon this appeal is: Did the relation of master and servant exist between appellee and the Pullman Palace car conductor at the time and in respect to the ejection of appellant from the train in question? The only direct evidence in the record tending to show the duties of said conductor or the relation he bore to either appellee or the Pullman Car Company is that he was in charge of the Pullman car from which appellant was ejected. That persons in charge of a sleeping car forming a part of a railway company's train, are to be regarded, in respect to their dealings with passengers of such company, as the servants of the railroad company, and that such company is responsible for their acts to the same extent as if they were directly employed by the company, is a sound rule of law, we think, and well sustained by the following authorities cited by counsel for appellant: Thorpe v. Railway Co., 76 N. Y. 406; Devinille v. New York Central & H. Ry. Co., 8 L. R. A. (N. Y.), 224; Pennsylvania Company v. Roy, 102 U. S. 451. In those cases it is held that the law will not permit a railroad company engaged in the business of carrying persons for hire, through any device or arrangement with a sleeping car company, whose cars are used by the railroad company and constitute a part of its train, to evade the duty and responsibility imposed upon it by law. As said in the case of Thorpe v. Railway Co., supra, "The business of running drawing cars in connection with ordinary passenger cars has become one of the common incidents of passenger traffic. The public interest and due protection to the rights of passengers require that the railroad company which is exercising the franchise of operating the road for the carriage of passengers should be charged with and responsible for the management of the train, and that all persons employed thereon should, as to passengers, be deemed to be the servants of the corporation." Sleeping cars are incorporated

in railway passenger trains in the interest of the company, because of the special accommodation afforded by them, and are open to passengers who desire to avail themselves of such accommodation and who are willing to pay therefor the sum charged in addition to the ordinary railroad fare. Passengers have no means of knowing what contract or private arrangement, if any, exists between the railway company and the owners of such cars with reference to the conduct of this part of the business, and have the right to assume that they occupy such car under contract with the railway company, and that the servants in charge of the sleeping car are the servants of such company. A common carrier undertakes absolutely to protect its passengers from the misconduct of its own servants while engaged in performing a duty which it owes to the passenger, and if the servant inflicts injury upon one of its passengers during the existence of the relation of carrier and passenger, the carrier is liable for the act and its natural consequences, no matter what may have been the motive which actuated the servant, and although the act was contrary to the express orders of the carrier.

In the case under consideration, however, the party complaining was not a passenger of appellee, but a trespasser upon its train. To him appellee did not owe the duty of exercising that degree of care required for the protection of its passengers, but could only be held liable for a breach of that duty which every one owes to another, even a trespasser, to avoid inflicting unnecessary injury upon him. Appellant being a trespasser upon appellee's train, the reasons for the rule which authorizes persons in charge of sleeping cars to be treated in respect to their dealings with passengers as the servants of the railway company, and holding such company responsible for their acts to the same extent as if they were directly employed by the company, do not exist in his case, and such rule can not be invoked by him. His right to maintain this action depends upon the existence of the conventional relation of master and servant between appellee and the Pullman palace car conductor, and if such relation did not exist at the time of appellant's ejection from the train, he can not recover. That said conductor was in fact the servant of the Pullman Palace Car Company is placed beyond controversy by the undisputed evidence in the record before us. Indeed, we do not understand that this fact is denied by appellant. The evidence shows, without contradiction, that said Pullman conductor was in the employ and paid by the Pullman Palace Car Company and was under the control and subject to the orders of that company, and that he was not under the control or subject to the orders of appellee.

It follows from what has been said that in our opinion appellee can not be held responsible for the act of the Pullman conductor, and for that reason, if no other, the judgment of the court below should be affirmed.

2. Having reached the conclusion that the relation of master and servant did not exist between appellee and the Pullman conductor in respect to the ejection of appellant from the train, the question whether or not said conductor in ejecting appellant was acting within the scope of his general authority, has been eliminated and need not be considered.

3. If, however, we are mistaken in the foregoing views and it should

be held that persons in charge of a sleeping car, constituting a part of a railway company's train, are the servants of such company in respect to their dealings with trespassers found on such car, then under the evidence in this case we think it necessarily follows that the Pullman conductor who ejected appellant from the train was the joint agent of appellee and the Pullman Palace Car Company and jointly liable for the tort committed upon appellant. In this aspect of the case we conclude that the compromise settlement made by appellant with the Pullman Palace Car Company, the judgment thereon and the payment of the same, was a full and complete satisfaction of appellant's cause of action or claim for damages and operated as a release of appellee and is a bar to a recovery in this suit. A review of the many decisions upon the question would serve no useful purpose. The agreement made the basis of appellant's judgment and the payment therefor, pleaded in bar of this action, is not merely a contract of covenant not to sue, nor does the language used raise the question of only a partial satisfaction. It is expressly stipulated that appellant by his next friend, Henry Blake, and the Pullman Palace Car Company, by its counsel, appears and *"by way of compromise of all the matters in controversy in this suit* between the plaintiff and the defendant, Pullman Palace Car Company, have agreed and consented and by these presents do agree and consent . . . that judgment may be rendered in this cause in favor of the plaintiff . . . against the defendant Pullman Palace Car Company for the sum of fifty dollars," etc. As shown by our conclusions of fact, judgment was duly entered in accordance with the terms of this agreement and said judgment has been fully paid off and discharged. All the authorities, as we understand them, are practically agreed that a party who has suffered an injury at the hands of joint tort feasors "may proceed against one or more of them and obtain successive judgments against all, but is only entitled to satisfaction once of his damages." Appellant availed himself of the privilege to sue both of the alleged wrong-doers in this instance, which resulted in an agreed judgment against one of them, viz., the Pullman Palace Car Company, which judgment has been paid. The phrase, "by way of compromise of all the matters in controversy in this suit between the plaintiff and the defendant Pullman Palace Car Company," found in the agreement upon which said judgment was rendered, clearly imports a settlement by compromise of the entire subject matter of the litigation, and the same is not qualified by the use of any language in said agreement indicating a different intention, or that the money to be paid in accordance with the terms thereof was to be accepted as only part satisfaction of appellant's damages. In the absence of such qualification it must be presumed that the language quoted was used advisedly and in its usual and ordinary acceptation, the legal effect of which, especially when taken in connection with the acceptance by appellant of the money paid, was a release of appellee from all liability for the wrongful act of which complaint is here made. In the consideration of this matter we have not been unmindful of the concluding part of the agreed judgment to the effect that the case in which the same was rendered should stand for trial as between the plaintiff and the Kansas City Southern Railway Company. We do not think this order of the court affects the

question. It does not appear that the same was made at the instance or request of either appellant or appellee. The court was not considering, nor called upon at that time to determine, the legal effect of the settlement between appellant and the Pullman Palace Car Company upon appellee's right of discharge by reason thereof, and such order in our opinion should not be construed as an admission or recognition of the parties or an adjudication of the court that the compromise judgment and the amount thereof was accepted by appellant as only a partial satisfaction of his damages.

The judgment of the court below is affirmed.

*Affirmed.*